Good morning. For the courtroom, I'm Judge Gould, and I'm in Seattle and participating by video, and I'm the presiding judge on this panel, so I'll just comment at the outset that we welcome all the advocates here. Judge Murguia is on the phone with us. Can you hear us, Judge Murguia? Good morning. Yes, I can. Thank you, Judge Gould. Yes, good morning. So I think the first order of business is that Judge Murguia and I want to express our thanks and appreciation to Chief Judge Guy Cole, who is normally on the panel. So if there's no further comment from Judge Murguia or Chief Judge Cole, let me say we had to change the order of arguments planned, because in the Strickland case, the appellant's lawyer wasn't here. So we're going to start off with the City of Oakland case. But before we do that, let me just say for the record that we have three cases submitted on briefs. One is Singh v. Barr, No. 16-73555. The second case is also Singh v. Barr, but it's a different Singh. The first case is Jagtar Singh. The second case is Rohit Singh, and that's No. 16-72857. And the third case on the briefs today, submitted on briefs, is Baez v. Barr, No. 18-70124. So those three cases shall be submitted, and we'll proceed to the argument. The first case on the argument calendar, as I said earlier, was the Strickland v. AT&T case, but we're going to have to delay that argument. So we'll start with the City of Oakland case, where City of Oakland v. Wells Fargo & Company. And for the appellant here, do we have Mr. Caccio? Yes, Your Honor. Well, please proceed. We have this scheduled for 15 minutes per side. And in general, we'd appreciate it if counsel can structure their arguments to try to live with that. But of course, if any judge has a question, you should feel free to answer it correctly. And do you plan rebuttal argument? Yes, Your Honor. I'd like to reserve five minutes for rebuttal. Okay. And since we have three cases submitted on the briefs, if we need to do so, we will extend a little time. But go ahead, please. Thank you, Judge Gould, and may it please the Court. The Fair Housing Act does something very important because discrimination in our housing markets is a tremendous evil. At the same time, the Supreme Court has recognized that the Act has critical limits. And in particular, the Court in the City of Miami cases held it requires proximate cause. In critical language, the justices said that the general tendency is to cut off cognizable harms at the first step. As the District Court itself recognized in this case, the City's alleged injuries are several steps removed from the asserted violation in this case. That fact dooms the City's injuries. Its injuries are far downstream and depend on all sorts of variables and independent choices by other actors. They are truly the types of ripples of harm that the Supreme Court referenced in Miami that a violation of the FHA may be expected to cause. The Supreme Court warned that, quote, nothing in the statute suggests Congress intended to provide a remedy wherever these ripples travel. If the City can sue here, it runs smack dab into the concerns that all the cases warn about. It permitted an electric utility to sue because greater foreclosures mean houses that aren't occupied as much. It permit flower shops or neighborhood businesses to sue because they'd be harmed from the additional vacancies and property degradation. It permit permit real estate brokers to sue on the theory that their commissions aren't as valuable. And all of that is why the Supreme Court has required a plaintiff to allege an injury that is the immediate result of a statutory violation, except in rare circumstances. If I were to say... Mr. Katyal, can I ask you a question? This is Judge Merguez. Yes, Judge Merguez. I know you mentioned the coffee shop and I think you're arguing that there may be a slippery slope here, but I guess my question for you is, isn't a local plant shop's drop in business attributable to many factors such as poor management or shortage of plants or shortage of whatever merchandise that is being sold, whereas a City's decline in taxes seems to be much more directly attributable to a drop in property values? Why isn't that different? So Judge Merguez, first of all, when I talk about what you call the slippery slope, actually it's not our argument. It is the Supreme Court, time and again in the proximate cause cases, and in particular Lexmark, has worried exactly about this question of other impacted businesses suing. And here, to get to the question you're asking, I think that the flower shop or the electric utility faces the exact same, probably even a shorter chain in causation, because all you have to show is that first the bank made bad loans, more expensive loans. Those loans made it more likely that bowers would default. Then it made it more likely that loan servicers wouldn't modify the loans or refinance, and then that would reduce the market value of the homes and lead to vacancy. And then, because of the vacancy, there wouldn't be as many or a flower shop. So I think you have basically almost the same number of steps. If anything, it's actually less of a step, because our reply brief at pages 18 to 19 says that for cities and the harm that they're asserting here, the tax violation, the California Constitution has a unique feature, and this is also like what Judge Feinerman decided just last Friday with respect to Illinois, in which you can't just directly trace a relationship between a property value and the revenue a city is going to get in tax. Because, like take Oakland, for example, you can only increase a property's value by 2% a year under the California Constitution. And so actually, in a place like the Bay Area, in which property values tend to increase by more than that, if you have foreclosures, it's certainly not clear that the tax base goes down, and indeed it very well may go up. So it's actually a clearer case to have the electric company or other businesses sue, and that's I think our fundamental point to you today, which is we get that the Fair Housing Act needs to be implemented and implemented vigorously, and Congress provided ways to do that. They said direct victims could sue. They said you could have class actions. They even had fee-shifting provisions for attorneys' fees and costs and things like that. They said the Federal Justice Department can sue, and indeed in this case, with respect to Oakland, they did exactly that. They had a nationwide suit, and page 4 of the complaint talks about the discrimination in Oakland, and the consent decree that was issued remedied what happened in Oakland. You have states and localities that are empowered under Congress to sue under Section 3610, and you have NGOs that can sue as well. What you don't have in the statute is the ability for the city to bring this kind of lawsuit, in which you have to go through, it's not just several steps, as Judge Murguia was saying a several different actors that are involved, and the harm here is fully derivative. The city isn't saying we suffered some harm that nobody else has suffered. They're saying as a result of the foreclosures and other things, our tax base went down. We think, yes, there are many steps, but it's more than that. It's exactly what this Court decided in Oregon Laborer, you know, a few years ago, which is, look, you can provide a regression study, and maybe that's going to show likelihood of harm, but it's never going to satisfy the proximate cause requirement, which is showing that there's some independent harm that's not derivative. If I was to make the best argument for, I think, my friend on the other side, as I see it, it would be this. It would be, we have a regression study, and that regression study shows a likelihood of discrimination and ultimately reduced tax flows. We think there are several problems with that. One is they're not showing one regression study. They're actually smushing together three different studies that say three different things to try and get them to that point, but even if you got them to that point, all it shows is likelihood of harm. That's exactly what was at issue in Oregon Laborers. It's what's issue in lots of the proximate cause cases like HEMI. It's even in Bank of America. The idea that just because something is foreseeable and you can have a study, that only shows but-for causation. It doesn't show proximate cause, and the Supreme Court was very clear in the City of Miami case at page 1305 that there is a proximate cause requirement here. Mr. Katyal, can I ask you another question? I'm concerned that your proposed categorical proximate cause standard would possibly require us to contradict all of the Supreme Court decisions such as Gladstone, Tropicant, and Haven. Can you tell me how your proposed categorical proximate cause standard wouldn't necessarily be contradictory to those Supreme Court decisions? Yes, absolutely, Judge Murguia. First of all, none of those three decisions say a word about proximate cause. They are standing cases. Just to take Gladstone, for example, at page 93, it says that the case is, quote, about statutory and constitutional questions concerning standing to sue under the Fair Housing Act. I understand that those cases address standing, but under your standard, it seems like the town in Gladstone, the tenants in Tropicant, and the organization in Haven would not have been able to recover for their injuries, but they did recover for their injuries. So I'm just curious and would like for you to reconcile the strict standard that you're asking us to adopt with the outcome in those cases, if you could, please. Yes, absolutely, Judge Murguia. I want to be very clear. We are not saying anything before this Court that calls into question any of the language or ultimate results that happened in any of those cases. So to take Gladstone, the harm in Gladstone was direct in the first link as opposed to six links down and many years later. So the complaint in Gladstone, and you can see this at page 110 of the opinion, of the Supreme Court's opinion, where they summarize it, here's what they say. They say, quote, if petitioner steering practices significantly reduce the total number of buyers in the Bellwood housing market, because some buyers are being steered away, quote, prices may be deflected downward. And that is just a simple supply and demand point that the Court was making. They're saying there's a bunch of discriminatory brokers. They're showing property only to certain people. They're showing property only to certain people, not everyone who would want to see it. And just standard economics would say, if you're showing property to fewer people, you have less demand and a lower price. We're not calling that into question at all, Judge Murguia. We're saying that is a kind of much more direct link to the extent you wanted to read this case as a proximate cause case. The problem is, here, you go through so many different steps. Even the causation. You have nothing, for example, like the tax point that I made to you a moment ago about the California Constitution. You don't have any of that because you have a very simple relationship in Gladstone of supply and demand. You have fewer buyers looking at a certain property. Of course prices are going to go down. And, you know, I'm sure that there are other folks who want to quibble with whether or not that actually does satisfy proximate cause. Our point to you is you can see that early on in the first or second, maybe second step, but you can't see it the way that this complaint comes to the court, which is so far away. And I think that raises a more general point, which is this city's lawsuit is very newfangled. We've never had, they can't even point to a successful example ever in history of a lawsuit like this. The Fair Housing Act's been around since before I was born. So it's not as if what we're coming in and saying is cut off some, you know, important remedy that's been used to enforce the Fair Housing Act. Rather, Congress empowered so many different actors to enforce the Fair Housing Act, as I mentioned before, direct victims and things like that. You'd mentioned two other examples and we, two other cases, and nothing we're saying contradicts those as our reply brief goes through. With respect to Havens, we do agree if a city had a Havens-like injury, so for example, if they set up an office to combat discrimination and promote diversity, and if a bank's practices was undermining that, we do think, just like the plaintiff in Havens, they would be able to recover if they could make their case. Mr. Cotton, if I could just ask one question. You've made reference to the regression studies and how they're mushed together, and I think you said no amount of regression studies, something to that effect, could ever be sufficient under, in face of a motion to dismiss, to establish proximate cause. Here we have, I think, three regression studies and maybe a fourth one, the so-called hedonic regression, and it showed that these Wells Fargo foreclosures reduced the value of foreclosed properties and the properties nearby. I mean, you're arguing that there's like no number of regression studies, if they had seven or eight that were covered, sort of every contingency, can you still not defeat a motion to dismiss on proximate cause grounds? Is there just, this can't be done? Right. Chief Judge Cole, you can't, and more is not better, more is actually worse. They're stitching together different things with different assumptions, and let me explain why. First of all, just I want to, I think a premise of your question from listening to it is you think that maybe, it sounds like you're saying motions dismissed should have a different standard or something like that, or, you know, it's a pleading standard. Yes, a pleading standard, has the plaintiff plausibly pled. Exactly, and every single one of the cases we're citing you on proximate causation is a motion to dismiss case, so City of Miami, Lexmark, Onza, Hemi, Bridge, and most importantly, York, well, York sitting by designation, the Ninth Circuit's decision in Oregon Laborers, in which they had the same kind of statistical argument, and the reason, to get to the reason why, not just the precedent, but the reason is, all the statistics do, whether it's one study or ten mushed together, is say, if someone conducts activity X, it has a likelihood of leading to Y, and what, that's the same foreseeability analysis that the Eleventh Circuit had used and got reversed by the U.S. Supreme Court. So, if we accept your argument today and issue a decision along the lines you were requesting, does that put the Ninth Circuit in conflict with the Eleventh Circuit on, like, Miami too? No, I don't, well, first, well, I think it depends on how you did it, but I don't think there is an Eleventh Circuit decision anymore, the decision on remand, because we had filed a cert petition, and then they voluntarily withdrew the complaint in the U.S. Supreme Court. We have now asked the Supreme Court to vacate that under the Supreme Court's It's certainly the case that we do think that the Eleventh Circuit got things wrong, and perhaps that's why, you can ask them, they've decided not to defend it anymore in the Supreme Court, but if you did look at the Eleventh Circuit's decision, we don't think it's persuasive for the reasons we explained, and Judge Feinerman, just three days ago, in the Northern District of Illinois, also found it not persuasive, and the reason is, proximate cause has got to mean something. We don't want to open the door, as their argument does, to municipal electric companies, businesses, other brokers being able to sue. There's already enough people that can enforce, and do enforce, the Fair Housing Act, particularly the U.S. Justice Department. Are there no further questions? Yes, Mr. Coggio, initially, you said you wanted five minutes for rebuttal, but, of course, the questions of the panel members took some of your time. We'll give you an extra two minutes of argument, so that you can provide a rebuttal argument. Thank you, Judge Gould, we appreciate it. May it please the Court. Robert Peck, on behalf of the City of Oakland. City of Miami articulated a number of general principles to guide the kind of decision that this Court faces. It said that there must be some direct relation between the injury and the statute. Some is a qualifier. They said that there is a general tendency with regard to damages to not go beyond the first step. That does not mean a hard and fast rule. And then they define the first step as dependent on the nature of the statutory cause of action, as well as an excuse me, this is Judge Murguia, Counsel. I'm sorry to interrupt you, but does what happened recently with the City of Miami affect in any way our decision today? It does not. And let me address that in two ways. First of all, we filed a brief in opposition in the Supreme Court, which followed an opposition to a motion to stay the ongoing activity in the district court. As you know, a motion to stay requires you to show that, number one, that four justices of the Supreme Court are likely to grant the petition for certiorari, that, number two, that five justices are likely to reverse the court, and, three, that there's irreparable damage. We opposed it. It went to Justice Thomas as the circuit justice. Justice Thomas wrote the concurring in part and dissenting in part opinion in City of Miami. So if any justice would have been sympathetic to Wells Fargo, it would have been him, and he denied the stay. We think that's good evidence that the Court would not have accepted the petition for certiorari and that the dismissal in the district court had nothing to do with the Supreme Court, and which is why when we filed our motion, our suggestion of mootness, we suggested that it not be vacated, but at the same time we note that even a vacated decision, and my friend concedes this in his most recent filing with this Court, it still has whatever persuasive value that it has, and we suggest that it has very strong persuasive value. In fact, the district court in this circuit, in the City of Sacramento case, found it highly persuasive. So did two recent district courts in Maryland. Meanwhile, my friend also mentioned the recent decision of a district court in Illinois, but that's a single line that gives no rationale, and so therefore it provides no analysis and no basis for us to understand why he found it unpersuasive. Counsel, Judge Gould, if I could interject a short question. Would it make sense for us to hold our decision until the Supreme Court acts on the motion to vacate, so that we know whether we have a circuit split or just a question of persuasiveness? Let me suggest that I don't think it's necessary to await that, although I'm sure that we will get a decision from the Supreme Court very quickly. They do tend to act quickly on these things. But as I said, the persuasive value of the 11th Circuit's decision, I think, still has legs. Obviously, it affected two courts in the 11th Circuit. It affected two courts in the 7th Circuit, the 4th Circuit, the Maryland cases, as well as the district court in Sacramento. So I think that there's still strong persuasive value, and I think that regardless of what the Supreme Court eventually does, I think you still need to face what the 11th Circuit did. Thank you, counsel. Right. So as I was saying, in the City of Miami, they explicitly refused to draw the precise lines that proximate cause has under the FHA. They constantly emphasized that we're talking about the FHA and that has something different, because despite the fact that they derived their principles, distilled them from RICO cases, and RICO cases also have common law foundations, they operate on different common law principles. And so, therefore, that doesn't mean anything. And the fact that in Holmes, the case that decided the proximate cause standard for RICO said that the key to better understanding of proximate cause lies in legislative history. So this, consistent with Lexmark, tells you that proximate cause is a statutorily specific inquiry, and that's why you have to look at the text and you have to look at the legislative history in their briefing. So the fact is that what we learned from Holmes also is that legislative history is important and also what justice demands. This also, again, emphasizes the nature of the statutory cause of action. Now, the city, what we hear from Wells Fargo is many of the arguments that they put forth before the Supreme Court on the standing question, and they're redressing them up as proximate cause questions. And they tried to say, well, standing's in this separate box that you don't enter again. But the fact of the matter is there's a relationship between the standing question and the proximate cause question, because, again, that helps you understand the nature of the statutory cause of action. So what you derive then is that it's important to understand who was indeed within the contemplation of Congress when they enacted the FHA and its 1988 amendments. Clearly, they had municipalities in mind. There was great discussion about the urban crisis, and we describe that in our brief, and the amicus briefs also describe that in great detail. And they talk about the effect on the tax base. They didn't talk about dry cleaners and electric companies and local grocers and flower shops. They talked about this because cities and their tax base was absolutely part of what they were considering when they passed the Fair Housing Act. And we know from Gladstone, despite the fact that my friend says it's a matter of economics, we know from Gladstone that the injury from When property values go down, that's an immediate direct impact, Gladstone said. And despite the fact that it may have been based on a different set of discriminatory practices, the Supreme Court said that Gladstone was on all fours with the city of Miami, that it was essentially one that required them to find the standing that they did, and one that also, I submit, informs the proximate cause inquiry. Here we have a broader aggregate of injury that, frankly, no one else is bringing. You heard that the Department of Justice supposedly brought it. Mr. Peck, can I ask you about that? I'm sorry to interrupt. This is Judge Murkia. Yes. I know that you argue in your briefs that local governments, including cities, are uniquely positioned to bring these large-scale aggregate city-wide claims, which is what you're referencing now. And I think, presumably, these types of lawsuits are more likely than an individual borrower's lawsuit to deter a large bank like Wells Fargo from engaging in these kinds of practices. But I guess my question for you is, aren't borrowers able to file class actions or joint lawsuits that also aggregate their claims? And why isn't the threat of those types of lawsuits sufficient to deter a bank like Wells Fargo here? Because they're almost never brought. And, of course, class actions are much more difficult to bring these days than they were when the Fair Housing Act was passed. But still, the type of injury we're talking about here is where minorities are offered, unknown to them, riskier and more expensive loans than are offered to similarly situated non-minority borrowers. And as a result, they don't recognize that they've been discriminated against. They go through and they pay their loans until suddenly it catches up with them in the way that causes the foreclosures. And so I also submit that this number of steps are so small that, in fact, there's the discriminatory loan, the default and foreclosure are essentially a single step, and that means lower property values, which is the injury to the city. So if anything, it may be a three-step process. It might even be just a two-step process. And, of course, that process contracts even more when there's a refusal by the bank to refinance a loan because we already know they're under the pressure of a discriminatory loan. But to return also to the fact that because they don't recognize it, the city's in a unique position to recognize locally what is happening, whether there is these statistical variations that lead to disparate impact and an effect on their residents. And the Justice Department's lawsuit was only about subprime loans, which ended in 2008. This lawsuit, which was filed in 2015 and has a two-year statute of limitations, involves loans that have gone on since then, as well as some of the loans that were prior to the 2008 cutoff period. And so as a result, what the Department of Justice did not do is bring a lawsuit to benefit Oakland for these loans. It brought a nationwide suit that was not specific to Oakland. Well, Counsel, Judge Gould, if I may ask you a question. I know that, as Mr. Cottrell said, a lot of the cases being cited involve motions to dismiss. But has there been any precedent from the U.S. Supreme Court that's ever said that in a case of great, if this is a case of great national importance, that it would be superior to assess the issue of whether a claim is stated after there's some evidence? Well, we know that, of course, that under the summary judgment standard, and there's lots of it, it's a combination of law and fact, and so therefore submitted to the fact finder, is something that is better determined at a summary judgment stage than a motion to dismiss stage. We know also that the plausibility standard is all that has to be met in order to survive a motion to dismiss. We submit that the statistics which go to the administrative possibilities and convenience, which we think informs, is informed by the Holmes factors as the district court described it, therefore allow you to look at that. We don't think that Oregon labor changes that. Oregon labor was probably dicta, as the district court noted, because it was not an issue that was argued. And on top of that, there's not much analysis. This was a smoking cessation program in which the question was how many of these smokers would have quit smoking if the smoking cessation program had been in place, and then this fund would not have had to pay to its participants money to help them quit smoking. That seems to be more like the municipal expenditures issue that the district court, the 11th circuit, and the city of Sacramento case all found to be too involved and requiring a different, basically not meeting the approximate cost standard. So we think that the property values, which was clearly within the contemplation of Congress, is clearly the classic kind of municipal claim under the Fair Housing Act. These claims were brought more than a decade ago by Baltimore and Memphis, were settled as part of the Department of Justice's lawsuit. And so, therefore, there's nothing unique or special about this. The fact that statistics are used, we cite the Baysmore v. Friday case in our brief because there the question was, could statistics show what the causes were, whether it was discrimination or not, that resulted in salary differentials? And the Court accepted that. Not only did they find that the statistics were sufficient, but even if they didn't include all the factors, they would be enough to prove the case. And here, we have used all the possible factors. Now, Wells Fargo raises job loss and divorce and medical issues, but those issues are not tied to race, and so, therefore, they affect everybody across the board. They're part of the decision to give the mortgage in the first place, so as a result, they're not factors that will differentiate the minority borrowers from the non-minority borrowers. And so, therefore, they're not a factor that needs to be taken into account. So in the end, I think what we can say is there are two principles to be drawn, not the principles Wells Fargo brings of whether anyone else can bring the lawsuit, because the city's injury is distinct. It comes from the same nucleus of operative facts, but so would an auto accident that hurts two different people. And so, here, what we have are, is it integral to the statutory cause of action? That's the nature of the statutory cause of action. We think it absolutely is. The flower shop and the coffee shop or not? Yes? MR. MERKIEWICZ This is Judge Merkiewicz. Can I ask you a question regarding the text of the FHA? Is the text of the statute enough without looking at the legislative history to support your argument that Congress intended the act to encompass injuries suffered like the ones you allege here? MR. BOUTROUS I think you need to go to the legislative history, in part, because unlike RICO statute, which uses the by reason of language, which puts in a proximate cause standard, FILA has a different standard that's explicit in the act. But the Lanham Act in Lexmark did not have a standard. So as a result, the Court had to look and say to a noncompetitor whose injury was derivative of the remanufacturers who were its client, and say, well, you're a further step removed. But the Lanham Act really anticipates this kind of false advertising as affecting more than the remanufacturers, but also the people who supply a part to them. And so as a result, we're going to recognize your injury as well. I think like that, because there is no explicit text that adopts a proximate cause standard, and we know that a common law, as well as within statutes, there are different proximate cause standards. Justice Scalia in Holmes says even within RICO, there are different standards, depending on whether the predicate act is sports bribery or transporting stolen goods. Those would require different proximate cause standards. And so therefore, we think that you have to adopt a standard that is specific to the FHA that takes into account the fact that there is no discontinuity here, and instead, that the city can go and pursue its claims beyond its complaint. Thank you. Thank you, counsel. With respect, I think my friend distorts what the Supreme Court did both in 2017 and in 2019. You heard him talk about the 2017 City of Miami decision. He quoted one part about some direct relation. What you never heard him talk about was the language I started the argument with from the Supreme Court about the ripples of harm and how the court wants to make sure that the statute doesn't extend to wherever those ripples travel. You never heard him deny that the electric company will now be able to sue, or the flower shop, or the broker, or all of these other folks. They permit all of those ripples to sue. And then, with respect to 2019, he said something astonishing. He said the Supreme Court, because it denied a stay motion, is saying something about the merits of that cert petition, which, of course, it's very clear precedent that a Supreme Court denial of a stay doesn't say anything about the merits. And to the extent he believed that, I would think he wouldn't want to have withdrawn voluntarily his own cert petition. With respect to the arguments he made on the merits, he said we didn't cite anything about legislative history. Well, that's, of course, the text of the statute and Supreme Court precedent and precedents from this court. And there is no legislative history. He points to none saying that cities can bring these kinds of lawsuits. Nothing at all. And to the extent you want to stretch the legislative history where it says that cities are harmed, that language also says businesses, like flower shops, are harmed. So you would, again, be enabling all of that. I think the most important point he said is, well, other folks have difficulty suing, so therefore the city should be able to. That is not the exception to the proximate cause requirement. Lexmark is clear. You have to be barred from being able to sue, like the consumers in that case. Just because something is difficult doesn't mean you can stretch the probable cause requirement. He has not a single cite for that proposition in either this court or the United States Supreme Court. And Judge Murguia, he talked about Gladstone and said it's the same thing. We agree that the property injury is the same. At the end, if you have lower property taxes, you have lower money going into a city. But the path to getting there is totally different. And Gladstone, as I explained at page 110, it is a very direct path. Here, it is an attenuated one that goes through several steps and is a fully derivative injury, exactly what Oregon laborers and the Third Circuit decision it quotes, which is not dicta, says. So you would be opening brand new ground if you opened this lawsuit up to this kind of proximate cause loosey-goosiness. Are there any questions? No questions here. Thank you, Mr. Cottrell. Judge Murguia, anything else? No, thank you. Okay, let me just comment. This is obviously a very important case, and it's also been excellently argued by counsel on both sides. The panel will now submit the case and render our decision in due course.
judges: Cole Jr., Gould, Murguia